SALTER, J.
 

 The Department of Highway Safety and Motor Vehicles (Department) petitions for a writ of certiorari regarding a circuit court decision vacating the administrative suspension of the respondent’s driver’s license following his refusal to consent to a breath test incident to his arrest for driving under the influence (DUD- We grant the writ, finding that the circuit court’s reliance on an earlier circuit court decision regarding Florida’s implied consent law,
 
 [1]
 

 Trauth v. Department of Highway Safety & Motor Vehicles,
 
 15 Fla. L. Weekly Supp. C871a (Fla. 11th Cir.Ct. July 3, 2008)
 
 (“Trauth I
 
 ”), has been overtaken by more persuasive district court precedent — specifically,
 
 Department of Highway Safety & Motor Vehicles v. Nader,
 
 4 So.3d 705 (Fla. 2d DCA 2009),
 
 review granted,
 
 36 So.3d 84 (Fla.2009).
 
 [2]
 

 Background
 

 At about 2:40 a.m. on a Saturday morning in May 2009, a Hialeah police sergeant observed the respondent driving his vehicle in an erratic fashion, drifting and jerking from one side of the lane to the other. A traffic stop followed. The police officer’s report and later testimony included observations that the respondent had an odor of alcoholic beverages on his breath, a flushed face, slurred speech, and poor responses to the field sobriety test.
 

 
 *25
 
 The police officer then asked the respondent to take a breath test, and the respondent refused to do so. The officer gave implied consent warnings, but the respondent continued to refuse to take the test. After submission of DUI arrest paperwork, including the officer’s sworn affidavit regarding the respondent’s refusal to submit to a breath test, the Department suspended the respondent’s driver’s license. The respondent requested and was afforded an administrative hearing regarding the suspension. The respondent testified that the implied consent warning was not properly administered and that it left him with the impression that he was being asked to consent to all three tests (breath, urine, and blood). The respondent said he refused the tests because “I don’t do needles at all.”
 

 The police officer had initially marked one of the implied consent forms to indicate that the respondent agreed to take a breath test, but the respondent refused to sign that form. The officer’s affidavit and testimony at the administrative hearing established that ultimately the respondent refused a breath test. The respondent also moved to invalidate the suspension based on circuit court interpretations of the implied consent law as in
 
 Trauth I.
 
 The Department’s field hearing officer sustained the suspension of the respondent’s license under the implied consent statute.
 

 The respondent then sought review by the circuit court appellate division. The circuit court followed
 
 Trauth I,
 
 noted our opinion in
 
 “Trauth II
 
 ”
 
 [3]
 
 to the effect that the propriety of warnings under the implied consent law “involves a close question of law,” and quashed the administrative order suspending the respondent’s license. The Department’s petition to this court followed.
 

 Analysis
 

 Conflicting circuit court decisions within our district were further complicated because of conflicting district court decisions among the Second, Fourth, and Fifth Districts. As noted, the conflict in decisions is presently pending before the Supreme Court of Florida. In the interim, DUI arrests will continue and the circuit court is entitled to know which of the conflicting analyses should be followed.
 

 The threshold question, however, is whether this case is appropriate for “second-tier” certiorari under the standards articulated by the Supreme Court of Florida in
 
 Custer Medical Center v. United Automobile Insurance Co.,
 
 62 So.3d 1086 (Fla.2010):
 

 This Court has continually applied certain fundamental principles for the use of certiorari to review decisions rendered by the circuit court acting in its appellate capacity from the time common-law certiorari jurisdiction was first recognized in 1855.
 
 See, e.g., Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885 (Fla.2003); Ivey v. Allstate Ins. Co.,
 
 774 So.2d 679 (Fla.2000);
 
 Haines City Community Dev. v. Heggs,
 
 658 So.2d 523 (Fla.1995);
 
 Combs v. State,
 
 436 So.2d 93 (Fla.1983);
 
 Halliday v. Jacksonville & Alligator Plank Rd. Co.,
 
 6 Fla. 304 (1855). We have consistently observed that “[a]s a case travels up the judicial ladder, review should consistently become narrower, not broader.”
 
 Haines,
 
 658 So.2d at 530. Therefore, when a district court considers a petition for second-tier certiorari review, the “inquiry is limited to whether the circuit court afforded procedural due process and
 
 *26
 
 whether the circuit court applied the correct law,” or, as otherwise stated, departed from the essential requirements of law.
 
 Id.; see also Kaklama-nos,
 
 843 So.2d at 889-90. The departure from the essential requirements of the law necessary for granting a writ of certiorari is something more than a simple legal error.
 
 See Kaklamanos,
 
 843 So.2d at 889 (citing
 
 Ivey,
 
 774 So.2d at 682). Rather, a district court should exercise its discretion to grant review only when the lower tribunal has violated a clearly established principle of law resulting in a miscarriage of justice.
 
 See id.
 
 (citing
 
 Ivey,
 
 774 So.2d at 682;
 
 Heggs,
 
 658 So.2d at 528). In
 
 Haines City Community Development v. Heggs,
 
 this Court clarified and narrowed the scope of common law certiorari jurisdiction by clearly stating that
 

 [a] decision made according to the form of the law and the rules prescribed for rendering it, although it may be erroneous in its conclusion as applied to the facts, is not an illegal or irregular act or proceeding remedial by certiorari.
 

 658 So.2d at 525 (quoting
 
 Basnet v. City of Jacksonville,
 
 18 Fla. 523, 526-27 (1882)).
 

 Furthermore, the district courts should consider the nature of the error and grant a petition for writ of certiorari
 
 “only
 
 when there has been a violation of a clearly established principle of law resulting in a .miscarriage of justice.”
 
 Combs,
 
 436 So.2d at 96 (emphasis supplied). Thus, the district court’s exercise of its discretionary certiorari jurisdiction should
 

 depend on the court’s assessment of the
 
 gravity of the error
 
 and the
 
 adequacy of other relief.
 
 A judicious assessment by the appellate court will not usurp the authority of the trial judge or the role of any other appellate remedy, but will preserve the function of this great writ of review as a “backstop” to correct grievous errors that, for a variety of reasons, are not otherwise effectively subject to review.
 

 Heggs,
 
 658 So.2d at 531 n. 14 (emphasis supplied) (quoting William A. Haddad,
 
 The Common Law Writ of Certiorari in Florida,
 
 29 U. Fla. L.Rev. 207, 228 (1977)). In other words, this Court has definitively expressed that certiorari cannot be used to grant a second appeal to correct the existence of mere legal error.
 
 See, e.g., Ivey,
 
 774 So.2d at 682-83. This is necessary because, unlike an appeal, common-law certiorari is entirely discretionary exercise of jurisdiction by the court and is not taken as a matter of right.
 
 See G-W Dev. Corp. v. Village of N. Palm Bch. Zoning Bd. of Adjustment,
 
 317 So.2d 828, 830 (Fla. 4th DCA 1975). A reviewing court on appeal may correct any and all errors below, whether jurisdictional, procedural, or substantive, and may modify, reverse, or remand a judgment.
 
 See Haines,
 
 658 So.2d at 526 n. 3. In contrast, a district court cannot correct just any error that may have occurred below through a second-tier certiorari proceeding. This proceeding is considered original in the sense that the subject-matter of the action or proceeding before the court is not to be reinvestigated, tried, and determined upon the merits generally as upon appeal at law or writ of error.
 
 See id.
 
 at 525-26 (quoting
 
 Basnet v. City of Jacksonville,
 
 18 Fla. 523, 527 (1882)). Hence, a circuit court appellate decision made according to the forms of law and the rules prescribed for rendering it,
 
 although it may be erroneous in its conclusion
 
 as to what the law is as applied to facts, is
 
 not
 
 a departure from the essential requirements of law remediable by certiorari.
 
 See Ivey,
 
 774 So.2d at 682 (quoting
 
 Haines City,
 
 658 So.2d at 525).
 

 
 *27
 
 The policy behind prohibiting certiora-ri to function as a second appeal is that the circuit court possesses final appellate jurisdiction in cases originating in the county court.
 
 See
 
 art. V, § 5, Fla. Const. As this Court articulated in
 
 Haines,
 
 if the role of certiorari were expanded to review the correctness of the circuit court’s decision, it would amount to a second appeal that usurps the final appellate jurisdiction of the circuit court in contravention of the Florida Constitution.
 
 See id.
 
 at 526 n. 4. This would deprive litigants of final judgments obtained in the circuit court and ignore “societal interests in ending litigation within a reasonable length of time and eliminating the amount of judicial labors involved in multiple appeals.”
 
 Id.
 
 A more expansive review would also afford a litigant two appeals from a court of limited jurisdiction, while limiting a litigant to only one appeal in cases originating in a trial court of general jurisdiction.
 
 See id.
 
 (citing
 
 Flash Bonded Storage Co. v. Ades,
 
 152 Fla. 482, 12 So.2d 164, 165 (Fla.1943)).
 

 In
 
 Ivey,
 
 this Court expressed that before a district court may exercise certio-rari jurisdiction to review a decision of a circuit court acting in its appellate capacity, the district court must analyze and develop “why the [relevant] circuit court’s decision constituted a denial of procedural due process, application of incorrect law, or a miscarriage of justice.”
 
 Ivey,
 
 774 So.2d at 688;
 
 see also Kaklamanos,
 
 843 So.2d at 889-90 (reaffirming
 
 Ivey).
 

 62 So.3d at 1092-93 (footnotes omitted).
 

 We conclude that the error in this case (which is the same error rectified in
 
 Department of Highway Safety and Motor Vehicles v. Nader,
 
 4 So.3d at 710) involves “clearly established law” and an interpretation which “disobeyed the plain language of the statute,” authorizing our issuance of the writ in this case. We find the Second District’s analysis in
 
 Nader
 
 to be persuasive for purposes of section 322.2615 when a driver is warned that driving privileges will be suspended if he or she refuses to submit to a “breath, blood, or urine test” under circumstances in which a request for a blood test is not authorized. We decline to apply or endorse the Fourth District’s invalidation of such a warning in
 
 Department of Highway Safety & Motor Vehicles v. Clark,
 
 974 So.2d 416 (Fla. 4th DCA 2007). We recognize, of course, that the Supreme Court of Florida may reach a different conclusion in the conflict case presently pending in
 
 Nader.
 
 In the interim, however, the circuit courts within this district should follow
 
 Nader
 
 rather than
 
 Trauth I
 
 when only a breath test is authorized but it is refused after a disjunctive warning of the kind involved here.
 

 Petition granted; opinion of October 19, 2010, and order denying rehearing of December 17, 2010, quashed.
 

 [1]
 

 . § 322.2615, Fla. Stat. (2009).
 

 [2]
 

 . The Supreme Court of Florida accepted jurisdiction and, on May 7, 2010, ordered that the case would be submitted without oral argument.
 
 Nader v. Fla. Dep't of Highway Safety and Motor Vehicles,
 
 36 So.3d 84 (Fla.2010).
 

 [3]
 

 .
 
 State Dep't of Highway Safety & Motor Vehicles v. Trauth,
 
 41 So.3d 916 (Fla. 3d DCA 2010).