# Third District Court of Appeal

## State of Florida

Opinion filed September 28, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-38
Lower Tribunal No. 13-461
_____

## Allstate Fire and Casualty Insurance Company,
Petitioner,

vs.

## Hallandale Open MRI, LLC, a/a/o Alexia Blake,
Respondent.


On Petition for Writ of Certiorari to the Circuit Court for Miami-Dade County, Appellate Division, Jacqueline Hogan Scola, Jorge Cueto, and Ariana Fajardo Orshan, Judges.

Shutts & Bowen, and Suzanne Youmans Labrit and Douglas G. Brehm (Tampa); Cozen O'Connor, and Peter J. Valeta (Chicago, IL), for petitioner.

Marlene S. Reiss, for respondent.

Before SALTER, LOGUE and SCALES, JJ.

SALTER, J.

Allstate Fire and Casualty Insurance Company seeks a writ of certiorari quashing a circuit court appellate division opinion affirming a county court judgment for a medical provider in a personal injury protection (PIP) auto insurance case. The appellate division decided an interpretive question regarding the sufficiency of PIP policy language following the Legislature's amendments to section 627.736, Florida Statutes, in 2008.

In doing so, a three-judge panel of the appellate division carefully considered pertinent decisions by this Court and by the Supreme Court of Florida: Geico Indemnity Co. v. Virtual Imaging Services, Inc., 79 So. 3d 55 (Fla. 3d DCA 2011); Geico General Insurance Co. v. Virtual Imaging Services, Inc., 90 So. 3d 321 (Fla. 3d DCA 2012); and Geico General Insurance Co. v. Virtual Imaging Services, Inc., 141 So. 3d 147 (Fla. 2013). The appellate division panel also considered, though conflicting, prior opinions issued on the question by the circuit court appellate division, as well as conflicting opinions issued by the First and Fourth District Courts of Appeal. The appellate division opinion correctly observed that, through the date the panel rendered its decision, this Court had not issued an opinion on the conflict issue.

The Pending Conflict of Decisions in the Supreme Court of Florida

2

Following the issuance of the present appellate division opinion in December 2015, the Supreme Court of Florida accepted for review a conflict of decisions on the same issue. Allstate Ins. Co. v. Orthopedic Specialists, No. SC15-2298, 2016 WL 282060 (Fla. Jan. 20, 2016). In the conflict cases, the First District interpreted the PIP insurance policy and statute as Allstate argues it should be interpreted here, Allstate Fire & Cas. Ins. Co. v. Stand-Up MRI of Tallahassee, P.A., 188 So. 3d 1 (Fla. 1st DCA 2015), and the Fourth District (in a split decision) interpreted the policy and statute just as the appellate division did in the judgment before us, Orthopedic Specialists v. Allstate Ins. Co., 177 So. 3d 19 (Fla. 4th DCA 2015).[1]

Under the standard for second-tier certiorari review established in Custer Medical Center v. United Automobile Insurance Co., 62 So. 3d 1086 (Fla. 2010), and Allstate Insurance Co. v. Kaklamanos, 843 So. 2d 885 (Fla. 2003), we do not have jurisdiction in this case. There was no violation of a "clearly established principle of law resulting in a miscarriage of justice," Custer Med. Ctr., 62 So. 3d at 1092, when the appellate division of the circuit court issued its opinion. At that time,

---

[1] Following the Supreme Court of Florida's acceptance of review of the conflicting decisions, the Second District issued an opinion agreeing with the First District's conclusion and disagreeing with the Fourth District's majority opinion. Allstate Indem. Co. v. Markley Chiropractic & Acupuncture, LLC, 41 Fla. L. Weekly D793 (Fla. 2d DCA Mar. 30, 2016).

the applicable principle of law was sufficiently unsettled that the Supreme Court of Florida accepted jurisdiction to resolve conflicting decisions regarding the issue.

In First Liberty Insurance Corp. v. O'Neill, 190 So. 3d 136 (Fla. 4th DCA 2016), the Fourth District addressed a petition for certiorari directed to a circuit court decision rendered at a time when the Fourth District had not addressed the pertinent legal issue, and when there existed "a split of authority from our sister courts on that issue." Id. The Fourth District denied the petition, concluding:

> Given the lack of binding authority from this court on the underlying issue, and given the split of authority between our sister courts on the underlying issue, we cannot say that the circuit court's apparent decision to follow the First District's authority was a departure from the essential requirements of the law at the time of its decision. Thus, because of that procedural posture, we are compelled to deny the petition for writ of certiorari and not decide the underlying issue until a final appealable judgment is entered.

Id. at 137.

### This Court's July 2016 Decision on the Legal Issue

The uncertainty confronted by the county courts and the circuit court appellate division in this district at the time the appellate division issued its opinion has since been dispelled. In a recent decision, a panel of this Court accepted and decided the same underlying legal issue: the sufficiency of PIP policy language following the 2008 amendments to section 627.736. The question was certified to this Court by the County Court for Miami-Dade County in five cases. All were consolidated here.

4

Fla. Wellness & Rehab. v. Allstate Fire & Cas. Ins. Co., 41 Fla. L. Weekly D1619, 2016 WL 3745527 (Fla. 3d DCA July 13, 2016).

Our Court has now reached the same conclusion as the First District in StandUp MRI of Tallahassee, P.A., 188 So. 3d 1, the Second District in Allstate Indemnity Co. v. Markley Chiropractic & Acupuncture, LLC, supra n. 1, regarding the pertinent policy language, and Judge May of the Fourth District in her dissent in Orthopedic Specialists, 177 So. 3d at 29-31 (May, J., dissenting).  So although we are constrained to dismiss the petition in the present case, we observe that the County Court wisely used its power to certify the issue directly to this Court under Florida Rule of Appellate Procedure 9.030(b)(4)(A) after identifying the conflicting county court and circuit court opinions on the topic, and in the absence of a binding decision from this Court.  Rule 9.030(b)(4) allows an efficient determination on a substantial and recurring issue such as this one when there is no definitive and binding case law regarding that issue and the reported cases are in conflict.

Should We Apply Our July 2016 Decision in this Certiorari Case?

The dissent correctly observes that our refusal to accept jurisdiction, grant certiorari, and quash the circuit court appellate opinion in the present case leaves intact a decision that we have since concluded is an incorrect interpretation of the pertinent insurance policy.  If circuit court appellate division opinions are intended to be final, however—with further review tightly circumscribed as specified in

Custer Medical Center and Kaklamanos ("something more than a simple legal error;" "when the lower tribunal has violated a clearly established principle of law resulting in a miscarriage of justice;" "an illegal or irregular act;" "grievous errors"[2])—we cannot grant a second level of review in a dispute such as this, originating as it did in the county court and decided by the circuit court appellate division without the benefit of our July 2016 decision.

Notably, the conflict cases that are currently under review by the Supreme Court of Florida, as well as the subsequent decision by the Second District in Markley Chiropractic, supra n. 1, and this Court in Fla. Wellness & Rehab., are not second-tier certiorari cases. Instead, all four of those opinions were based on cases certified directly to those district courts by county courts under Florida Rule of Appellate Procedure 9.030(b)(4)(A).

The exercise of our jurisdiction in second-tier certiorari cases reflects the variety of cases and issues that are the subject of such petitions. In State, Department of Highway Safety & Motor Vehicles v. Freeman, 63 So. 3d 23, 27 (Fla. 3d DCA 2011), we applied the standards set forth in Custer Medical Center, concluding that the underlying issue involved a departure from "clearly established law" and a statutory interpretation (not, as here, the interpretation of an insurance contract)

---

[2] These criteria are considered in extensive detail in Custer Medical Center, 62 So. 3d at 1092.

6

which "disobeyed the plain language of the statute." This Court and the Second District (in a second-tier certiorari case involving the same issue) quashed the orders under review, and the Supreme Court of Florida upheld the exercise of that jurisdiction in Nader v. Department of Highway Safety & Motor Vehicles, 87 So. 3d 712 (Fla. 2012).

In the present case, however, conflicting decisions from District Courts regarding an issue of contractual interpretation are awaiting resolution of that conflict by the Supreme Court of Florida. Although we have now decided how we would resolve that conflict of decisions if we were empowered to decide it, we are not so empowered, given the procedural posture of the case, and we had not expressed this Court's resolution of the issue at the time that the circuit court appellate division considered the language of the insurance policy and reached its own decision.

The appellate division's decision was principled, applied the Fourth District's 2015 opinion in Orthopedic Specialists, and was not a violation of a clearly established principle of law resulting in a miscarriage of justice. Indeed, if the Supreme Court of Florida upholds the Fourth District analysis and quashes the conflicting decisions of the First, Second, and Third Districts, the appellate division's analysis may turn out to be the correct one. Granting the petition in this case would be tantamount to faulting the circuit court appellate division for lacking

7

a crystal ball or Ouija board that would have revealed this Court's decision issued seven months later.

For these reasons, we lack jurisdiction to grant the relief sought by the petitioner. Petition dismissed.


SCALES, J., concurs.

Allstate Fire & Casualty Insurance Company vs. Hallandale Open MRI, LLC
Case No. 3D16-38

LOGUE, J., dissenting.

The issuance of a writ of certiorari to review the judgment of a circuit court sitting in its appellate capacity is strictly limited. In this case, we must decide whether those limits prevent us from issuing the writ involving a question of law that has already been accepted for review by the Florida Supreme Court. If we decline to issue the writ, the litigants in this case, and other litigants in the same procedural posture, would be barred from obtaining the benefit of the Supreme Court's imminent decision. Because none of the reasons for limiting the writ apply here, and denying the litigants the benefit of the Supreme Court's forthcoming decision would constitute a patent miscarriage of justice, I would issue the writ.

On the merits, the question is whether certain language in a personal injury protection insurance policy is sufficient to put insureds on notice that reimbursement of medical bills will be limited by the statutory schedule in section 627.736, Florida Statutes (2008). For some time now, different judges on the Miami-Dade county court and different panels of judges on the reviewing circuit court have been issuing

a welter of conflicting decisions.[3] Here, the county court entered the fray, made its decision, and the circuit court affirmed with an opinion which expressly conflicts with other panels of the same circuit.[4] The losing party petitioned this court for a writ of certiorari.

After the circuit court issued its opinion, we addressed the same substantive question in a different case that had been directly certified to this court by the county court pursuant to section 34.017 (3) & (4), Florida Statutes (2008), and Florida Rules of Appellate Procedure 9.030(b)(4)(A) & 9.160. Fla. Wellness & Rehab. v. Allstate Fire & Cas. Ins. Co., 41 Fla. L. Weekly 1619, 1620 (Fla. 3d DCA July 13, 2016). We agreed with the First District and Second District, which had reached a similar

---

[3] See, e.g., Allstate Ins. Co. v. Gables Ins. Recovery Inc., a/a/o Moran, No. 13-305 AP (Fla. 11th Cir. Ct. May 18, 2016) (language in policy not sufficient) (Lederman, Cohen, and Prescott, JJ.); Allstate Fire & Cas. Ins. Co. v. Hallandale Open MRI, LLC, a/a/o Blake, 23 Fla. L. Weekly Supp. 683 (Fla. 11th Cir. Ct. Dec. 7, 2015) (language in policy not sufficient) (Hogan-Scola, Cueto, and Orshan, JJ.); Allstate Fire & Cas. Ins. Co. v. Hallandale Open MRI, LLC, a/a/o Politesse, 21 Fla. L. Weekly Supp. 989 (Fla. 11th Cir. Ct. June 23, 2014) (language in policy sufficient) (Korvick, Bloom, and Walsh, JJ.); Allstate Indem. Co. v. Gables Ins. Recovery, Inc., a/a/o Jimenez, 22 Fla. L. Weekly Supp. 1146 (Fla. 11th Cir. Ct. June 8, 2015) (language in policy sufficient) (Bernstein, Hendon, and Manno Schurr, JJ.); Allstate Prop. & Cas. Ins. Co. v. Royal Diagnostic Ctr. Inc., a/a/o Mondy, 21 Fla. L. Weekly Supp. 627 (Fla. 11th Cir. Ct. Apr. 3, 2014) (language in policy sufficient) (Smith, Lobree, and Verde, JJ.).

[4] Allstate Fire & Cas. Ins. Co. v. Hallandale Open MRI, LLC, a/a/o Blake, 23 Fla. L. Weekly Supp. 683 (Fla. 11th Cir. Ct. Dec. 7, 2015) (noting prior conflicting panel opinions).

conclusion. <u>Allstate Fire & Cas. Ins. v. Stand–Up MRI of Tallahassee, P.A.</u>, 188 So. 3d 1 (Fla. 1st DCA 2015); <u>Allstate Indem. Co. v. Markley Chiropractic & Acupuncture, LLC</u>, 41 Fla. L. Weekly D793 (Fla. 2d DCA Mar. 30, 2016). We certified conflict with the Fourth District, which had reached a contrary conclusion. <u>Orthopedic Specialists v. Allstate Ins. Co.</u>, 177 So. 3d 19 (Fla 4th DCA 2015). We noted that the Supreme Court had already accepted jurisdiction of the conflict between the district courts. <u>Allstate Ins. Co. v. Orthopedic Specialists,</u> No. SC15–2298, 2016 WL 282060 (Jan. 20, 2016).

With this background in mind, we turn to the question of whether we have jurisdiction to issue the writ. The standard for issuing second-tier certiorari is whether the circuit court's decision denies procedural due process or departs from the essential requirements of law that results in a miscarriage of justice. <u>Custer Med. Ctr. v. United Auto. Ins. Co.</u>, 62 So. 3d 1086, 1092 (Fla. 2010). The application of this standard is guided by the judicial policy that second-tier certiorari cannot be used to grant an individual litigant what is no more than a second appeal. <u>Id.</u> at 1093. The Supreme Court has explained:

> The policy behind prohibiting certiorari to function as a second appeal is that the circuit court possesses final appellate jurisdiction in cases originating in the county court. . . . [I]f the role of certiorari were expanded to review the correctness of the circuit court's decision, it would amount to a second appeal that usurps the final appellate jurisdiction of the circuit court in contravention of the Florida

11

> Constitution. This would deprive litigants of final judgments obtained in the circuit court and ignore societal interests in ending litigation within a reasonable length of time and eliminating the amount of judicial labors involved in multiple appeals. A more expansive review would also afford a litigant two appeals from a court of limited jurisdiction, while limiting a litigant to only one appeal in cases originating in a trial court of general jurisdiction.

Id. (internal citations and quotation omitted). An expansive view of second-tier certiorari would also "destabilize Florida's delicate judicial ladder, opening the flood gates of second appeals to our already overworked and overburdened district courts of appeal as described by those appellate courts." Nader v. Fla. Dep't of Highway Safety & Motor Vehicles, 87 So. 3d 712, 728 (Fla. 2012) (Lewis, J., dissenting).

None of these concerns exist in the situation here where the Supreme Court has already accepted jurisdiction to resolve the underlying legal issue. When the Supreme Court has already accepted jurisdiction, we are not granting a second appeal by issuing the writ. To the contrary, we are simply allowing the parties to place themselves in the "pipeline" so that they can obtain the benefit of the Supreme Court's pending resolution of the underlying issue. Allowing the parties to avail themselves of the benefit of an upcoming Supreme Court decision hardly constitutes a usurpation of the circuit court's appellate jurisdiction, does not undermine the judicial policy of finality, falls far short of reflecting a mere disagreement by this court with the outcome in the circuit court, and wastes no limited judicial resources

with excessive appeals because the issue is already slated for Supreme Court resolution.

The Supreme Court has noted that it is impossible to create an exhaustive list of when second-tier certiorari should issue. Id. at 726. For this reason, it has recognized that second-tier certiorari must be allowed some play in its joints if it is to fulfill its purpose. The Court "has repeatedly emphasized that district courts must be allowed a large degree of discretion so that they may judge each case individually." Id. (citation and quotation omitted.). "[T]he district court's exercise of its discretionary certiorari jurisdiction should 'depend on the court's assessment of the gravity of the error and the adequacy of other relief.'" Custer, 62 So. 3d at 1092 (quoting Haines City Cmty. Dev. v. Heggs, 658 So. 2d, 523 531 n.14 (Fla. 1995)). In so doing, the court must "not usurp the authority of the trial judge or the role of any other appellate remedy, but . . . [must] preserve the function of this great writ of review as a 'backstop' to correct grievous errors that, for a variety of reasons, are not otherwise effectively subject to review." Id.

Failure to issue the writ here means the parties who filed identical lawsuits in the same circuit court, some of whom are commercial rivals, will have different legal outcomes based purely on the luck of which judges they drew. The parties to the present case will have the benefit of the uniform rule of law resulting from the

13

Supreme Court's imminent decision if, <u>but only if</u>, the clerk of court serendipitously assigned their case to one of the panels of circuit court judges that has accurately predicted the outcome of the Supreme Court's decision rather than one of the panels that has not. And which panel is which becomes known only after the Supreme Court's ruling comes down in the future. If we are not careful, the docketing of cases in such a system will take on the nature of a raffle: you get your case number and you take your chances.

But the Supreme Court never intended that the rules governing the issuance of a writ of certiorari should be interpreted in a manner that causes outcomes in the court system to take on random character of a sweepstakes. Indeed, the Supreme Court has recently made clear that a rule of law fashioned by the legislature that causes legal outcomes to result from "luck rather than conduct" is irrational and unconstitutional. <u>Wright v. City of Miami Gardens</u>, SC16-1518 slip op. at 21, 23 (Fla. Sept. 15, 2016), (holding an election statute unconstitutional because it disqualified a candidate "solely because luck was not on [his] side"). The Court applies this principle with no less force to rules of jurisdiction it has fashioned.

It is clearly a miscarriage of justice to prevent further review in a manner that causes the identical cases of similarly situated persons in the same court to be decided differently based on conflicting legal interpretations. And this clear

14

miscarriage of justice resulting from the failure to allow review reflects a departure from the most essential legal requirement—equality before the law. No other legal remedy exists to stop this miscarriage of justice here except a writ of certiorari. The Supreme Court has expressly recognized that the district courts have jurisdiction when issuance of the writ is the only available "backstop" to prevent such a patently unjust outcome. Custer, 62 So. 3d at 1092. For these reasons, I would grant the writ, quash the decision below based upon our decision in Florida Wellness, and certify conflict with the Fourth District's opinion in Orthopedic Specialists so that these litigants receive—for good or for ill—the equal treatment under the law that will result from the Supreme Court's impending decision.