658 So.2d 1101 (1995)
NATIONWIDE Mutual FIRE INSURANCE COMPANY, Appellant,
v.
Michael KEEN and Charleen Keen, his Wife, Appellees.
No. 94-0293.
District Court of Appeal of Florida, Fourth District.
July 19, 1995.
Rehearing and Rehearing Denied September 6, 1995.
*1102 Michael B. Davis of Paxton, Crow, Bragg, Smith & Keyser, P.A., West Palm Beach, for appellant.
Philip M. Burlington of Caruso, Burlington, Bohn & Campiani, P.A., and Schuler, Wilkerson, Halvorson & Williams, P.A., West Palm Beach, for appellee.
Rehearing and Rehearing En Banc Denied September 6, 1995.
FARMER, Judge.
This appeal presents the issue whether a liability insurance carrier breaches a duty to defend its insured in pending litigation which does not allege a claim covered by the policy and where its insured had unequivocally disclosed facts to the carrier before suit was filed that negated any possible coverage. We conclude that Nationwide did not breach its duty to defend.
Before suit was filed in this case, the insured conceded to his carrier that on the occasion in question he operated the water craft with a 40-hp engine. Everyone agrees that this fact places any claim arising from the occurrence outside the coverage afforded by the policy. The question is whether there is any reason why a carrier must defend an insured who concedes a critical fact against his monetary interest that places a claim beyond the carrier's obligation to pay.
Appellee argues that the covenant to defend is broader than the covenant of coverage. That is one of those widely accepted legal shorthands that if accepted uncritically is calculated to mislead. It is true that the carrier's duty to defend an insured against a claim may extend to a claim as to which it is ultimately determined that there is no coverage. That circumstance arises when coverage depends on an ultimate, usually nonobjective, fact as to which the parties are in dispute but which is not resolved until a jury or a judge decides the issue. For example, when the plaintiff alleges that an insured acted negligently (for which the policy provides coverage), but the jury finds the act intentional (for which there is no coverage), the carrier may have to defend the insured at least until the critical fact is settled.
The covenant to defend in a liability policy is concededly an instrumental part of the indemnity package. Does that mean that the covenant to defend is broader than coverage? Or is it merely that it is different? Perhaps it is neither. In the hypothetical circumstance posed, the duty of defense  though relating to the coverage  is simply too unsettled to let the carrier walk away and leave its insured unprotected against the onslaught. To do so would rob the insured of a critical part of the policy and could even render the coverage impotent. What the shorthand really wants to convey is that the carrier must defend a claim that may ultimately be covered until it is certain that it is *1103 not covered. In that sense, the duty to defend combines with the duty of coverage: the covenant of coverage informs the duty to defend.
We have the following pertinent circumstances in this case. The insured conceded to the carrier shortly after the incident that a critical and objective fact placed any claim beyond coverage, i.e. that he operated the craft with an engine more powerful than the coverage afforded. That concession was backed up by corroborative evidence.
The complaint filed by the third party claimant does not allege anything about the horsepower of the craft. Nor did the claimant ever assert the existence of evidence tending to show that the horsepower of the engine was within coverage. In fact, the tack used by the claimant was instead to attempt to bar any consideration of the evidence showing that the engine was not covered. It is readily apparent that the carrier was acting in good faith.
Claimant argues that an ambiguity in the complaint requires a defense, citing Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810 (Fla. 1st DCA 1985). That may be true, but if uncontroverted evidence places the claim outside of coverage, and the claimant makes no attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage, we think the carrier is relieved of defending. Tennessee Corp. v. Lamb Bros. Const. Co., 265 So.2d 533 (Fla. 2d DCA 1972), may be an aberration, but it is founded on logic and fairness.
This case does not involve a Taylor v. Safeco Ins. Co., 361 So.2d 743 (Fla. 1st DCA 1978), problem. In that case, there was an honest dispute between the insured and the carrier over the critical coverage fact, and the insured refused to consent to the carrier's defense under a reservation of rights. An insured is always free to refuse a defense under a reservation of rights. If the insured refuses such a defense, the claims administration statute,[1] requires that the carrier immediately seek a declaratory judgment as to the rights and liabilities of the parties. But the failure of the carrier to comply with the statute will not create coverage otherwise lacking. AIU Ins. Co. v. Block Marina Inv. Inc., 544 So.2d 998 (Fla. 1989). It can, however, lose the carrier the right to deny coverage because of an insured's failure to comply with a condition subsequent of the policy, e.g. the covenant not to settle with the claimant or the covenant to cooperate in the defense. This case does not involve these concerns.
We are thus compelled to reverse the court's finding as to the coverage issue. On that issue, the court improperly excluded the evidence of the insured's communications with the carrier regarding the horsepower of the engine. Although the insured was deceased by the time of trial, the evidence of what he told the carrier was admissible under the declaration against interest exception to the hearsay rule. § 90.804(2)(c), Fla. Stat. (1993). The record evidence establishes but one fact as regards the coverage issue, and that was that the insured used an engine placing the occurrence outside coverage.
We therefore reverse the finding as to a breach of the covenant to defend as well as the finding of coverage. It follows that the award of attorney's fees is also improper because the insured's assignee will recover no judgment. See § 627.428, Fla. Stat. (1993).
REVERSED.
GUNTHER, C.J., concurs.
POLEN, J., concurs in result only.
NOTES
[1] § 627.426(2), Fla. Stat. (1993).